UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| MARIEA J. PRICE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 09-339-DCR |
| ) | |
| V. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Mariea J. Price ("Price") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). [Record Nos. 9 and 10] Price argues that an administrative law judge ("ALJ") erred in finding that she is not entitled to a period of disability, Social Security Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Price.

**I.**

Price protectively filed for a period of disability, SSI, and DIB on October 20, 2005, alleging a disability beginning December 31, 2001. [Tr., pp. 52-56, 355-358] Price's claim was denied initially and upon reconsideration. [Tr., pp. 35-37, 41-44] On March 2, 2007, Price,

along with her attorney and vocational expert ("VE") Anne Thomas appeared before ALJ Donald Rising for an administrative hearing. [Tr., pp. 361-386] On May 14, 2007, ALJ Rising issued an opinion denying Price's application for social security benefits. [Tr., pp. 11-22] The Appeals Council denied Price's request for review on August 7, 2009. [Tr., pp. 6-10] Having exhausted her administrative remedies, Price commenced this proceeding.

Price was forty years old at the time of the administrative hearing. [Tr., pp. 52, 361] She finished high school and attended both a military and a corrections academy. [Tr., p. 366] Price previously worked as a security officer at an international airport, a cashier at grocery and department stores, and a security guard at a penitentiary. [Tr., pp. 366-368]

The ALJ initially determined that Price has engaged in substantial gainful activity since the alleged onset date of December 31, 2001. [Tr., p. 16] Specifically, the ALJ found that the Price earned greater than $850 a month through December 31, 2002. However, ALJ Rising determined that Price's earnings had been below the substantial gainful activity level for 2003, 2004 and 2005. ALJ Rising determined that her earliest possible onset date was December 31, 2002, and that she was insured for DIB through December 31, 2010.

After reviewing the record and the testimony presented during the administrative hearing, the ALJ concluded that Price has the following medically determinable impairments: hypertension, Gastroesophageal Reflux Disease ("GERD"), and fibromyalgia. [Tr., p. 16, ¶ 3] Notwithstanding these impairments, the ALJ found that Price has no impairment or combination of impairments that has significant limited, or is expected to limit, her ability to perform basic work related activities for twelve consecutive months. [Tr., p. 19] As a result of this assessment,

ALJ Rising determined that Price had not been under a disability as defined in the Social Security Act, from December 31, 2002, through May 14, 2007, (the date of the decision). [Tr., p. 22]

**II.**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. 416.920(a)(4). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). Second, a claimant must show that she suffers from a severe impairment. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 1520(d); 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical

evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can do past work. If she can, she is not disabled. 20 C.F.R. § 1520(f); 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 1520(g); 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Price v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

Price alleges that the ALJ Rising incorrectly determined that she does not have a severe impairment. She further asserts that the ALJ would have found her disabled if he had completed the evaluation process.

### A. Severe Impairment

The ALJ denied Price's DIB and SSI claims based on findings that she does not have a severe impairment or combination of impairments. Price asserts that the medical evidence establishes that her impairments meet the requisite level to qualify as a severe impairment. An impairment or combination of impairments is not severe if it does not significantly limit physical or mental ability to perform basic work activities. 20 C.F.R. § 416.921(a) (2010). Basic work activities is defined as the ability and aptitude necessary to do most jobs, such as physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision,

co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b) (2010).

The United States Court of Appeals for the Sixth Circuit has held that the standard to establish a severe impairment "has been construed as a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (*citing Murphy v. Sec'y of Health and Human Servs*, 801 F.2d 182, 185 (6th Cir. 1986), *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 690-692 (6th Cir. 1985), and *Farris v. Sec'y of Health and Human Servs* 773 F.2d 85, 89-90 (6th Cir. 1985)). "[A]n impairment qualifies as non-severe only if, regardless of a claimant's age, education, or work experience, the impairment would not affect the claimant's ability to work." *Salmi*, 774 F.2d at 692. The severity inquiry serves the goal of administrative efficiency by allowing the ALJ to screen out totally groundless claims. *Farris*, 773 F.2d at n.1. The burden is on the claimant to prove she has a severe impairment. *Higgs*, 880 F.2d at 863. However, the mere diagnosis of a condition says nothing about the severity of a condition. *Id*. (*citing Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (diagnosable impairment not necessarily disabling)).

Price details the medical history that supports her claim for disability but does not provide any rationale showing that the ALJ's findings are not supported. Price contends that the record shows that she suffers from a severe impairment based on her gynecological problems, chest pain on exertion, and the abnormal findings in the record. In addition, Price maintains that the ALJ failed to comply with Social Security Ruling 96-3p.

### 1.     Gynecological Problems

Price specifically takes issue with the following finding of ALJ Rising:

> Ms. Price alleges inability to work due to a plethora of unconfirmed symptoms affecting the neuromuscular and pulmonary system; however, as noted all tests have been normal and review of the evidence shows that she actually stopped working in May 2001 due to abdominal/pelvic cramping rather than the symptoms alleged thereafter.

[Tr., p. 21] Price contends that this finding is not supported by her medical records. She asserts that the evidence referenced in this finding is the earliest medical evidence of record, the first treatment note from Zachary Family Practice dated May 22, 2001 [Tr., p. 124]. In the subjective section, this note states, "tired a lot- (no longer working) yesterday," and in the impression section, the note states, "1. abd[ominal] uterine bleeding . . .2. Fatigue." Price argues that this medical evidence does not show she actually stopped working because of abdominal/pelvic cramping. While Price admits that she reported to Dr. Zachary that she was no longer working on May 22, 2001, this is over one and one-half years before the earliest possible alleged onset date of December 31, 2002, as determined by ALJ Rising. Price also points out that her gynecological problems required surgical intervention in December 2004, and these gynecological problems by themselves constitute a severe impairment.

The medical records indicate that Price likely suffered from gynecological problems and sought a long history of treatment. However, a long history of treatment for a condition does not establish a severe impairment. Price fails to state how these gynecological problems would limit her physical or mental ability to do basic work activities. Thus, this argument is insufficient to support her claim.

### 2. Chest Pain on Exertion

Next, Price takes issue with the ALJ's finding that:

> In relation to cardiopulmonary complaints of chest discomfort and difficulty breathing, Dr. Grimball's records show totally normal findings during routine visits. However, for further evaluation, Ms. Price was seen for stress testing on July 26, 2006. Impression was that the EKG changes during testing were nondiagnostic. Findings included low workload achieved but there was normal resting wall motion with no stress induced wall motion abnormality. The results show that the claimant reached 91% of her maximum predicted heart rate. The test was terminated due to reports of chest discomfort and fatigue.

[Tr., p. 19] Price points out that the ALJ fails to mention the reason it was non-diagnostic was the baseline EKG was abnormal from the beginning. Price contends that the medical records show a cardiac impairment resulting in chest pain on exertion, which is a severe impairment.

In determining whether a claimant is disabled, an ALJ must consider all symptoms, including pain. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a) (2010). Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (*citing Kirk v. Sec'y of Health and Human Servs*, 667 F.2d 524, 538 (6th Cir. 1981)). However, absent supporting medical evidence, a claimant's lone testimony is insufficient to support a claim for disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a) (2010). Here, the ALJ states:

> After careful consideration of the entire record, the undersigned finds no evidence to support a finding of a severe impairment resulting in more than minimal work-related limitation of function. In relation to all alleged symptoms, the claimant's treatment has all been conservative in nature with no referrals for surgery or other aggressive measures. All of her clinical and diagnostic examinations have been relatively unremarkable with no documentation of any musculoskeletal, neurological, cardiopulmonary, or other systemic abnormality which could reasonably be expected to result in the degree of pain and functional limitations as alleged. The claimant's evidence is subjective with no corroborative medical

> evidence establishing a specific diagnosis. The undersigned notes that despite the intensity of her complaints, the claimant did not fully pursue physical therapy and is not currently involved in any physical or other rehabilitative therapies although she reported efficacy of same in relieving the severity of her condition. The claimant alleges weakness and inability to walk distances without suffering pulmonary distress, but she does not require the use of an ambulatory aid. She does not utilize prescribed breathing medication because she has determined that it 'won't work.' She has not required any undue emergency care or inpatient management for pain control or symptom management and she does not utilize a pain control device such as a TENS unit. The claimant's symptoms are being managed through the use of a neuropathic agent, namely, Neurontin and she is not requiring any type of narcotic pain medication or use of psychotropics for all possible psychiatric components.

[Tr., p. 21] The ALJ considered in great detail Price's allegations of chest pain but found these allegations were not credible.

The ALJ is charged with the responsibility of observing the demeanor and credibility of witnesses. *Bradley v. Sec'y of Health and Human Servs*, 862 F.2d 1224, 1227 (6th Cir. 1988) *(citing Kirk v. Sec'y of Health and Human Servs*, 667 F.2d 524, 538 (6th Cir. 1981)). Therefore, his conclusions regarding credibility should be highly regarded. *Id*. A blanket assertion that the claimant is not believable will not pass muster. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

In the present case, ALJ Rising goes into great detail describing his conclusion based on Price's choice of medical treatment. Specifically, he notes that Price's treatment was conservative, and she did not pursuing physical or other rehabilitative therapy. ALJ Rising further notes that Price does not use an ambulatory aid, breathing medication, a pain control device, or pain medication. In addition, Price has not required the use of emergency care for her pain. The fact that the ALJ failed to mention the reason the EKG was non-diagnostic was

because the baseline EKG was abnormal does not prove that Price suffered from such intense chest pain on exertion that should be considered a severe impairment. The ALJ is not required to state every detail of a claimant's medical record; he just must consider all her symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929 (2010). Additionally, Price does not explain how this alleged chest pain on exertion would limit her physical or mental ability to do basic work activities. Thus, the record demonstrates that the ALJ's finding is supported by substantial evidence.

### 3. Abnormal Findings

Price also contends that the ALJ failed to consider the abnormal limitations and findings in the medical records. In particular, Price claims that the ALJ did not properly consider her brain MRI scan, the abnormal findings from her physical examination, and her Cardiopulmonary Exercise Report.

On August 16, 2004, Price had a brain MRI scan showing small white matter fossi, which according to the interpretation section of the MRI and her neurologist, is unusual for her age. [Tr., pp. 210-211] Price argues that the ALJ dismissed the abnormal findings of the brain MRI scan. In fact, the ALJ noted that Dr. Charles Smith of the University of Kentucky Neurology Center reviewed this MRI scan and "found nothing untoward or concerning in the study." [Tr., p. 18] Indeed, the ALJ did dismiss the abnormal findings of the brain MRI scan based on the medical evidence in the record. While Price is understandably opposed to this finding, it is clearly supported by the medical evidence in the record.

According to Price, the ALJ failed to consider Dr. Smith's abnormal findings from her physical examination. There abnormal findings on her physical examination include:

> Sensation was decreased to pinprick on the left side of the face . . . Motor system: The patient had normal muscle tone and maybe a little bit decrease of muscle bulk in the distal part of her extremities. She had generally decreased muscle strength in all four extremities. Sensory: There was decreased light touch, pinprick and vibration on the left side.

[Tr., p. 220] The ALJ discussed this 2-page report in his decision and stated, in part, that Price "had slight giveaway weakness of the extremities but strength was 5/5. . . She had patchy sensory abnormalities that were not in a dermatomal pattern and there was no evidence of ptosis." [Tr., p. 18] The ALJ further discussed her ability to walk on her toes and heels and that her reflexes were intact. [Tr., p. 18] Unmistakably, the ALJ considered Price's decrease in sensation and her "decreased muscle strength in all four extremities." It would seem strange to require an ALJ determining whether a severe impairment exists to specifically state that he considered a claimant's "normal muscle tone" or her "maybe a little bit decrease of muscle bulk." After all, normal muscle tone or a slight decrease of muscle bulk is not likely to cause a severe impairment that would limit her physical or mental ability to do basic work activities. Regardless, it is clear from the ALJ's discussion that this report was considered in detail. Thus, this argument does not merit overturning the ALJ's decision.

Price also asserts that the ALJ did not properly consider the Cardiopulmonary Exercise Report, signed September 12, 2006 by Dr. Schuldheisz. This report states, in part, "[t]he pattern of abnormalities suggests the possibility of neuro-muscular disease as a cause of her exercise limitation." [Tr., p. 253] Again, an ALJ must consider all symptoms, but is not required to specifically address every medical document in the record. *See* 20 C.F.R. §§ 404.1529, 416.929

(2010). In fact, ALJ Rising does mention this examination by Dr. Schuldheisz and the results. Clearly, the ALJ considered the Cardiopulmonary Exercise Report and its abnormal results.

In addition, Price does not provide this Court with an explanation regarding how the "possibility of a neuro-muscular disease" that limits her ability to do cardiac or pulmonary exercises would also limit her ability to do basic work activities. This Court is left to guess that Price is arguing that she would be limited in her ability to perform physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 416.921(b). However, the records does not support this assertion. As the Commissioner points out, Price's medical records are devoid of any notion that she is even minimally limited in her ability to work. Further, none of Price's treating physicians noted she had any limitations. Price's primary care physician provided a letter in support of her application for disability; but notably, he did not indicate that she suffers from any physical or mental limitations as a result of her medical conditions. [Tr., p. 248] The Cardiopulmonary Exercise Report does not support Price's assertion that she has a severe limitation.

### 4. Social Security Ruling 96-3p

Next, Price maintains that the ALJ failed to comply with the Social Security Ruling 96-3p. Price quotes this section of Social Security Ruling 96-3p, which states:

> Because a determination whether an impairment(s) is severe requires an assessment of the functionally limiting effects of an impairment(s), symptom-related limitations and restrictions must be considered at this step of the sequential evaluation process, provided that the individual has a medically determinable impairment(s) that could reasonably be expected to produce the symptoms. If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and

> proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe. In addition, if, after completing development and considering all of the evidence, the adjudicator is unable to determine clearly the effect of an impairment(s) on the individual's ability to do basic work activities, the adjudicator must continue to follow the sequential evaluation process until a determination or decision about disability can be reached.

Soc. Sec. Rul. 96-3p, 1996 WL 374181, at *2 (July 2, 1996); [Record No. 9-1, p. 10] Price asserts that this Social Security Ruling requires the consideration of symptom related limitations. She claims that her symptom related limitations include weak legs that cause her to occasionally fall when she is walking [Tr., p. 370] and no coordination and cramping in her hands [Tr., p. 374]. Price further claims that she has to sit down if she has been up on her feet for 15 minutes and her lower arms and hands get weak and her arms feel heavy from the shoulders. [Tr., p. 372]

As this Court noted previously, it is the ALJ's responsibility to observe the demeanor and credibility of witnesses and such conclusions should be highly regarded. *Bradley*, 862 F.2d at 1227 *(citing Kirk*, 667 F.2d at 538). A blanket assertion that the claimant is not believable will not pass muster; nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence. *Rogers*, 486 F.3d at 248.

Here, the ALJ determined that Price does not experience pain, discomfort, or other symptoms of the severity, frequency, or duration necessary to preclude the performance of any and all work activity. [Tr., p. 21] To explain this finding, the ALJ points out that Price's complaints are subjective with no corroborative medical evidence. As previously discussed, Price's medical records do not contain any statements limiting her ability to work and none of Price's treating physicians noted she had any limitations. In addition, the ALJ noted that, despite

the intensity of her complaints, the claimant did not fully pursue physical therapy and is not currently involved in any physical or other rehabilitative therapies although she reported efficacy of same in relieving the severity of her condition. The ALJ further found that her allegations of weakness and inability to walk distances without suffering pulmonary distress to be not credible, because Price does not require the use of an ambulatory aid or breathing medication. As further proof, ALJ Rising observed that Price has not required any undue emergency care or inpatient management for pain control or symptom management and she does not utilize a pain control device such as a TENS unit. Further, Price does not require any type of narcotic pain medication.

In short, the ALJ clearly considered Price's symptom related limitations but did not find her testimony to be credible based on the supporting medical records. Price's argument fails because the ALJ complied with the Social Security Ruling 96-3p. Overall, the record demonstrates that the ALJ Rising's decision that Price does not suffer from a severe impairment is supported by substantial evidence.

### B. Completing the Evaluation Process

Price's also argues that she would have been found disabled if the ALJ had completed the evaluation process. However, inasmuch as the Court had determined that Price does not suffer from a severe impairment and that the Commissioner's decision is supported by substantial evidence, this argument fails. If a claimant cannot show that she suffers from a severe impairment, she cannot make a showing that she is disabled. *See* 20 C.F.R. §

404.1520(c); 20 C.F.R. § 416.920(c). Therefore, the evaluation correctly ends with the determination that Price does not suffer from a severe impairment.

**IV.**

The ALJ's decision denying benefits is supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff Mariea J. Price's Motion for Summary Judgment [Record No. 9] is **DENIED**;

(2) Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 10] is **GRANTED**; and

(3) The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 30th day of April, 2010.



Signed By:
*Danny C. Reeves* DCR
United States District Judge